UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**SUSAN MCDONALD SHANKS,**          }
                                    }
     **Plaintiff,**                 }
                                    }
     v.                             }
                                    }   **CASE NO. 2:13-cv-1770-SLB**
**CAROLYN W. COLVIN, Acting**       }
**Commissioner of Social Security,**}
                                    }
     **Defendant.**                 }

## MEMORANDUM OPINION

Susan McDonald Shanks ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability, disability insurance benefits ["DIB"], and supplemental security income ["SSI"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

### I.  PROCEDURAL HISTORY

Plaintiff initially filed an application for a period of disability, DIB, and SSI on May 21, 2010, alleging a disability onset date of September 16, 2009. (R. 100-05.)[1] This application was denied on October 12, 2010 by the Social Security Administration ["SSA"] (R. 47-48.) Subsequently, plaintiff requested a hearing before an Administrative

---

[1] References to page numbers in the Commissioner's record are set forth as ["R. ___"].

Law Judge ["ALJ"], which was held on April 13, 2012. (R. 61.) After the hearing, the ALJ found that, while plaintiff was unable to perform any past relevant work, she was capable of making a vocational adjustment to other work, such as cleaner, marker, and cashier, which are jobs that exist in significant numbers in the national economy. (R. 18-19.) In light of this finding, the ALJ denied plaintiff's request for a period of disability, DIB, and SSI on May 4, 2012. (R. 20.)

On May 29, 2012, plaintiff petitioned the Appeals Council to review the ALJ's decision. (R. 8.) The Appeals Council found no reason under its rules to review the ALJ's decision, and it denied plaintiff's request for review on July 26, 2013. (R. 1.) Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. (*Id*.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on September 24, 2013. (Doc. 1.)[2]

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that

---

[2] Reference to a document number, ["Doc.___"], refers to the number assigned to each document as it is filed in the court's record.

of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

**A. THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and SSI.[3] *See* 20 C.F.R. § 404.1520(a)(1)-(2); *Bowen v. City of New York*, 476 U.S. 467, 470

---

[3] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we

3

(1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[4] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the

---

> go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.

20 C.F.R. § 404.1520(a)(4).

[4] The Regulations define "substantial gainful activity":
> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
>
> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[5]

The ALJ found that plaintiff had not engaged in substantial gainful activity since September 16, 2009, the alleged onset date. (R. 14.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are,

---

[5]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*." 11th Cir. R. 36-2 (emphasis added).

therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[6] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

---

[6] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that plaintiff had the following medically determinable impairments: "a history of endometriosis, fibromyalgia, degenerative disc disease of the cervical spine, mitral valve prolapsed, a history of low back arthralgias, right shoulder bursitis, depression, and pain disorder." (R. 14.) The ALJ noted that the "evidence of record shows that the claimant's impairments cause more than minimal limitation in her ability to perform basic work activities." (*Id.*)

**3. The Listings**

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 14.) Specifically, the ALJ found that medical evidence did not establish "the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required" to satisfy listing 1.04. (R. 15.) The ALJ also found that plaintiff's mental impairment did not meet or equal the criteria in listing 12.04

7

because it did not "cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (*Id.*)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commissioner's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff is an individual approaching advanced age (50 years old on the alleged disability date) with a high school education. (R. 18.) The ALJ found that plaintiff has the RFC to perform a range of "light exertional unskilled work; with postural activities performed only occasionally; never climbing ladders, ropes, and scaffolds; and avoiding exposure to hazards." (R. 16.) The ALJ found that plaintiff's RFC restricts her from performing any past relevant work. (R. 18.)

8

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of cleaner, marker, and cashier, which are jobs that exist in significant numbers in the national economy. (R. 19, 41.) Because the ALJ found that jobs consistent with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (*Id.*)

### B. MS. SHANKS'S CLAIMS

Plaintiff challenges the ALJ's RFC assessment on the grounds that the ALJ did not support the assessment with a medical source opinion, (Doc. 11 at 7), and that the ALJ failed to make "mental RFC findings," (*Id.* at 6). Plaintiff also contends that the ALJ failed to set out limitations in his RFC findings with sufficient specificity. (*Id.*)

**1. Lack of a Medical Source Opinion**

Plaintiff admits that, while an ALJ "*may* ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairment(s) could reasonably be expected to produce [the] alleged symptoms," 20 C.F.R. § 404.1529(b) (emphasis added), an ALJ is not required to do so. SSR 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929 that the ALJ must follow[7]: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the plaintiff's case survives the first step, then

---

[7] Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ found that "[t]he medical evidence supports the claimant's diagnosis for physical and mental impairments but not as limiting as the claimant alleged." (R. 17.) In a Function Report, plaintiff noted difficulty with reaching, bending, remembering tasks, concentrating, walking more than a few feet, lifting, squatting, standing, climbing stairs, sitting, and kneeling. (R. 137-41.) Plaintiff also testified that she cannot drive long distances, cannot sit more than thirty minutes, can walk only a block on a "good day," and can stand only five minutes before she is in pain. (R. 31-37.) She testified that her daughter does "most of" the chores, such as laundry and cleaning. (R. 32.)

The ALJ first considered plaintiff's musculoskeletal impairments, which included fibromyalgia, degenerative disc disease of the cervical spine, low back arthralgias, and right shoulder bursitis. (R. 17.) The ALJ noted that x-rays of plaintiff in March 2009 showed "mild discogenic degenerative disease but normal alignment," and January 2011 x-rays of plaintiff's left shoulder appeared normal. (*Id.*) Because plaintiff's alleged onset disability date is September 16, 2009, the March 2009 x-rays provide relatively little evidence of plaintiff's condition from September 2009 to the date of the ALJ's opinion.

11

Additionally, x-rays of plaintiff's left shoulder do not address plaintiff's right shoulder bursitis and do not provide significant evidence that plaintiff's fibromyalgia is not as limiting as alleged. However, the ALJ relied on additional evidence: "[n]otably, the claimant does not have diagnostic evidence supportive of a referral to see a specialist or a recommendation for even physical therapy." (*Id.*) Plaintiff's conservative treatment history provided substantial evidence for the ALJ to discredit plaintiff's allegations of disabling pain. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding that plaintiff's "course of treatment [that was] entirely conservative in nature" constituted substantial evidence supporting the ALJ's opinion) (internal quotations omitted). The ALJ also cited a January 2012 report noting that plaintiff's back pain was "stable" to support his findings. (R. 17, 392.)

Additionally, the ALJ considered medical reports by consulting physician Dr. Jack Zaremba. (R. 17.) Dr. Zaremba examined plaintiff in March 2012 and reported that plaintiff had several medical impairments, including hypertension, fibromyalgia, degenerative disc disease of the cervical and thoracic spine, bilateral shoulder arthralgia, mitral valve prolapse, ovarian cysts, asthma, and COPD. (R. 401.) Dr. Zaremba opined that plaintiff had the following limitations: sitting for only three hours, standing and walking for only one hour, lifting limited to two pounds, and no ability to push and pull or reach. (R. 404.) The ALJ assigned little weight to Dr. Zaremba's assessment of plaintiff's limitations because the limitations were inconsistent with Dr. Zaremba's physical examination of plaintiff, in which Dr. Zaremba reported that plaintiff is a "[w]ell

developed well nourished female in no acute distress." (R. 402.)[8] The report also noted that plaintiff has a full range of motion in her extremities, and a normal range of motion in her shoulders, except for only 20-30 degree limitations in "abduction" and "forward elevation." (R. 17, 409.)

Plaintiff does not contest the ALJ's decision to assign little weight to Dr. Zaremba's opinion, but rather, contends that the ALJ had to further develop the record by obtaining a medical source opinion. However, the ALJ was not required to further develop the record, given that the ALJ based his findings on substantial evidence, including the evidence noted above and plaintiff's physical activities. Plaintiff stated that she cannot walk more than a few feet at a time, but on a Function Report asking about daily activities, plaintiff stated that she engages in "walking for exercise and physical well being." (R. 136). Additionally, Dr. Dan Lowery, an examining psychologist, recommended that plaintiff perform low intensity exercise, such as aquatic aerobics, to "improve her mood and reduce her pain." (R. 312.) In making this recommendation, Dr. Lowery considered not only plaintiff's depression but also plaintiff's physical disorders, including fibromyalgia and mitral valve prolapse. (R. 309, 312.) The ALJ noted that

---

[8] Even though plaintiff does not contest the ALJ's decision to assign little weight to Dr. Zaremba's recommended limitations, (*see* Doc. 11 at 9), the court notes that the ALJ did not err in doing so. "[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (internal quotations omitted). Dr. Zaremba's opinion was inconsistent with his medical records from plaintiff's physical exam. (R. 17, 401-04.)

plaintiff's alleged inability to carry out physical activities is inconsistent with Dr. Lowery's recommendation. (R. 17.)

The ALJ addressed plaintiff's endometriosis and noted that plaintiff had a hysterectomy in 2010. (R. 17, 354.) Because plaintiff testified that the hysterectomy relieved the excessive uterine bleeding she experienced in 2009, the ALJ relied on substantial evidence in finding that plaintiff's endometriosis did not limit plaintiff from engaging in substantial gainful activity. (R. 17, 38-39.)

The ALJ did not err in assessing plaintiff's RFC. In relying on plaintiff's medical history, reports by plaintiff's examining practitioners, plaintiff's conservative treatment history, and plaintiff's activities, the ALJ based his finding that plaintiff is not disabled on substantial evidence and, thus, was not required to seek a medical source opinion before making this determination.

**2. Mental RFC Findings**

Plaintiff contends the ALJ erred by not making "mental RFC findings." (Doc. 11 at 6.) Specifically, plaintiff claims that, after having found that plaintiff has moderate difficulty with concentration, persistence, and pace, the ALJ had to account for that difficulty by limiting plaintiff's RFC accordingly. (*Id.* at 6-7.) The ALJ found that plaintiff's depression and pain disorder were not as limiting as alleged because the record contained "no [reports] of counseling, no specialized treatment, no recommendations to see a specialist, and no inpatient treatment." (R. 17.) Dr. Lowery, the examining psychologist, gave plaintiff a Global Assessment of Functioning ["GAF"] score of 60,

which indicates a "moderate" level of impairment. (R. 17, 312.) A score between 51 and 60 indicates an assessment of "[m]oderate symptoms OR moderate difficulty in one of the following: social, occupational, or school functioning." American Psychiatric Assoc., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 1994) (DSM-IV). Consistent with plaintiff's GAF score, the ALJ noted that plaintiff had moderate difficulty in concentration, persistence, and pace, (R. 15), but the ALJ did not *explicitly* account for that limitation in his RFC assessment, (R. 16). The Commissioner contends that the ALJ was not required to do so, and the court agrees.

"[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). The ALJ recognized that plaintiff's "depression and anxiety had a bearing on her [RFC]," but noted that the "level of treatment and reported symptoms are consistent with her ability to perform within the [RFC] identified in this decision." (R. 17.) The ALJ relied on substantial evidence in finding that plaintiff's mental impairments do not limit her ability to perform unskilled work. Therefore, by asking the VE a hypothetical question regarding an individual who could perform only "light, unskilled work," (R. 40), the ALJ accounted for plaintiff's moderate difficulties in concentration, persistence, and pace, even without stating so explicitly.

15

### 3. Specificity of RFC Findings

Plaintiff contends that, in assessing plaintiff's RFC, the ALJ failed to meet the specificity requirement of SSR 96-8p, mandating that an RFC assessment "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p. Specifically, plaintiff claims that the ALJ did not "enumerate the postural functions he limited generically to occasional," and did not state the types of hazards to be avoided under the RFC findings. (Doc. 11 at 6.)

The ALJ made the following RFC assessment: plaintiff "is capable of light exertional unskilled work; with postural activities performed only occasionally; never climbing ladders, ropes, and scaffolds; and avoiding exposure to hazards." (R. 16.) As the Commissioner notes, several courts have recognized an ALJ's use of the term "postural activities" to generally mean bending, climbing, kneeling, stooping, crouching, balancing, and crawling. (Doc. 12 at 15.) *See Navas v. Comm'r of Soc. Sec.*, 289 F. App'x 555, 558 (3d Cir. 2008) (finding that the ALJ sufficiently defined the claimant's limitations by stating that "[the] claimant was incapable of performing postural activities with more than occasional regularity"); Giles *v. Astrue*, 433 F. App'x 241, 244 (5th Cir. 2011) (stating that the ALJ limited plaintiff to "no more than frequent postural activities (and no climbing of ladders)"); *Brooks v. Soc. Sec. Admin.*, 430 F. App'x 468, 474 (6th Cir. 2011) (noting that the ALJ asked the VE about the abilities of an individual limited to "no postural activities except for occasional balancing"); *O'Connor-Spinner v. Astrue*, 627

F.3d 614, 617 (7th Cir. 2010) (noting that the ALJ posed a hypothetical question about a worker limited from "postural activities like crouching or crawling"); *Abreu v. Astrue*, 303 F. App'x 556, 558 (9th Cir. 2008) (finding the ALJ's step-four analysis proper where the ALJ "concluded that [the claimant] has 'the [RFC] to perform light work activity which involves occasional postural activities'"). The court finds no error in the ALJ's use of the term "postural activities." Additionally, the ALJ's assessment that plaintiff should avoid "exposure to hazards" was sufficiently specific to indicate plaintiff's limitations. *See Holland v. Comm'r of Soc. Sec.*, 530 F. App'x 860, 863 (11th Cir. 2013) (rejecting an argument that the ALJ's hypothetical question to the VE was deficient where the hypothetical required avoidance of "hazards in the work place").

Even if the ALJ failed to sufficiently specify the postural activities and hazards to which the RFC refers, the ALJ's error was harmless. The ALJ posed a hypothetical question to the VE to determine the job opportunities available to an individual with the same RFC as plaintiff. (R. 40.) Of the three jobs the VE identified, all would satisfy the requirements of a RFC that more specifically delineated which postural activities and hazards the ALJ limited in his RFC findings. For example, according to the Dictionary of Occupational Titles ["DOT"], the job of cleaner requires occasional stooping, kneeling, and crouching, but requires no balancing, crawling, or climbing. DICOT 323.687-014 (G.P.O.), 1991 WL 672783. Given that the ALJ's RFC assessment provides for occasional postural activities, the job of cleaner accommodates plaintiff's limitations, so the ALJ did not err in generally limiting plaintiff's "postural activities." Under the DOT,

17

neither the job of marker nor cashier requires any climbing, balancing, stooping, kneeling, crouching, or crawling, so those jobs similarly accommodate plaintiff's limitations. DICOT 209.587-034 (G.P.O.), 1991 WL 671802; DICOT 211.462-010 (G.P.O.), 1991 WL 671840. Additionally, none of the three identified jobs requires exposure to any type of hazard. *See* DICOT 323.687-014 (G.P.O.), 1991 WL 672783; DICOT 209.587-034 (G.P.O.), 1991 WL 671802; DICOT 211.462-010 (G.P.O.), 1991 WL 671840.

The ALJ identified limitations with sufficient specificity in his RFC findings, and thus, did not err.

## IV. CONCLUSION

Based on the reasons stated above, this court is of the opinion that the Commissioner's decision is due to be affirmed. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 20th day of November, 2014.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE